IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NIMROD B.H. TAYLOR,<br><br>       Plaintiff,<br>v.<br><br>CHRISTOPHER RANDALL and AMBER SUNDQUIST,<br><br>       Defendants. | Case No.: 3:23-cv-01147-AN<br><br><br>OPINION AND ORDER |

*Pro se* plaintiff Nimrod B.H. Taylor brought this action against defendants Christopher Randall and Amber Sundquist, alleging violations of his Fifth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983.

Numerous motions are pending before the Court. Defendants move to dismiss the action or, in the alternative, for an order requiring Taylor to make his allegations more definite and certain. Plaintiff moves for default judgment, summary judgment, appointment of counsel, and to compel discovery. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons stated herein, the motion for default judgment is DENIED. The motion to dismiss is GRANTED without prejudice and with leave to amend. All other pending motions are DENIED as moot.

## LEGAL STANDARD

**A.      Default Judgment**

If a defendant fails to plead or otherwise defend, a plaintiff may seek entry of default. Fed. R. Civ. P. 55(a). After default is entered, a plaintiff may apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2).

1

B. **Federal Rule of Civil Procedure 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed R. Civ. P. 12(b)(6). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Bare assertions that amount to mere "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

In ruling on a (12)(b)(6) motion to dismiss, a court may consider only "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). A court may also consider "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.*

The court must construe pleadings by *pro se* plaintiffs liberally and must give them the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). Before dismissing a complaint, a court must give a statement of the complaint's deficiencies and must give leave to amend the complaint unless it is "'absolutely clear'" that the deficiencies could not be cured by amendment. *Id.* (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

C. **Federal Rule of Civil Procedure 12(e)**

When a pleading "is so vague or ambiguous that the [responsive] party cannot reasonably prepare a response," the responsive party may move for a more definite statement. Fed. R. Civ. P. 12(e). If a more definite statement is not filed within fourteen days after notice of the order, the court may strike the pleading. *Id.*

## BACKGROUND

Plaintiff brings multiple claims. In his first claim he alleges that defendants, the former and current superintendents of Deer Ridge Correctional Institution ("DRCI"), violated his Eighth Amendment rights by requiring him to work in the kitchen at DRCI with approximately fifty other inmates, which put him at risk of exposure to COVID-19. Compl., ECF [2], at 2. Because DRCI suspended other group activities such as recreational yard and educational programs, plaintiff argues, defendants were aware of the risk posed by causing inmates to work together in the same space. *Id.* 3.

In the second claim, plaintiff alleges that his Fifth and Fourteenth Amendment rights were violated when he was "denied proper timely access to the library and Courts." *Id.* 5. Specifically, plaintiff states that unknown corrections officers and law librarian Sarah Carrion[1] opened his legal mail in an effort to intimidate him and to retaliate against him for his complaints related to working in the kitchen. *Id.* 5-6.

In the third claim, plaintiff alleges that he was punitively placed in administrative segregation, sometimes referred to as solitary confinement or "the hole," in violation of the Eighth Amendment. Plaintiff wrote a letter to Randall explaining his concerns about his legal mail and expressed his fear that Carrion would cause him to be placed in administrative segregation. *Id.* 12-13. On November 9, 2022, plaintiff was placed in administrative segregation after being accused of aggression by Carrion. *Id.* 13. Plaintiff maintains that he was not acting aggressively, but merely asked why he could not use the computer in the law library. *Id.* 13-14. Plaintiff states that after asking to speak to a sergeant or lieutenant, Carrion called him a "fucking Nigger" and pressed the panic button, calling corrections officers. *Id.* 14-15.

Plaintiff requested that officers at his disciplinary hearing review security camera footage from the library incident, but he was told that the security camera did not have any working audio. *Id.* 16. Despite this, plaintiff was given ten days of administrative segregation, two fifty-dollar fines, fourteen days

---

[1] Plaintiff describes Carrion and the two unknown corrections officers as defendants. Carrion's name is not, however, listed in the caption of the complaint, and she was not served with a copy of the summons and complaint. Nor were any John Doe defendants listed in the caption of the complaint.

loss of privileges, lost his job at the prison call center, and "had his custody status raised to the highest level." *Id.* 16-17.

In the fourth claim, plaintiff alleges that he was held in prison beyond his release date because he did not accrue good time credits for the period of September 26, 2020 through October 19, 2020, in violation of his Fifth, Eighth, and Fourteenth Amendment rights. *Id.* 19-21. In the fifth claim, he says that he was not permitted to participate in early release programs that he was approved for, including the Alternative Incarceration Program ("AIP"), as retaliation for his complaints, also in violation of his Fifth, Eighth, and Fourteenth Amendment rights. *Id.* 27.

In the sixth claim, plaintiff alleges that Randall and Sundquist, along with Prison Grievance Coordinator J. Ybarra[2], deliberately made the prison grievance system difficult to use to impede plaintiff's access to the courts, in violation of his Fifth, Eighth, and Fourteenth Amendment rights. *Id.* 31-32.

In the seventh claim, plaintiff alleges that defendants were responsible for and "effectively" aware of the ongoing violations of his rights in their roles as superintendent. *Id.* 31. Their failure to protect plaintiff was the result of "incompetence or direct deliberate indifference." *Id.*

Plaintiff's eighth claim concerns a legal mail policy instated by Sundquist on July 19, 2023, which plaintiff alleges was intended to impede his and other prisoners' access to the courts by requiring them to submit written requests to mail legal mail in violation of their Fifth, Eighth, and Fourteenth Amendment rights. *Id.* 32.

Plaintiff's ninth and final claim concerns his *pro se* status. Plaintiff alleges that despite his indigency he is being charged filing fees and his wages were garnished. *Id.* 33-35. In addition, although not a factual allegation, plaintiff argues that his complaint should be liberally construed. *Id.*

In support of his complaint, plaintiff filed a Memorandum, ECF [5], First Affidavit in Support of Compl., ECF [6], Second Affidavit in Support of Compl., ECF [7], Third Affidavit in Support

---

[2] Plaintiff describes Ybarra as a defendant, but he was not listed in the caption of the complaint or served with the summons and complaint.

of Compl., ECF [8], Fourth Affidavit in Support of Compl., ECF [9][3], and Fifth Affidavit in Support of Compl., ECF [10].[4]

Plaintiff filed the complaint on August 4, 2023. On October 20, 2023, defendants waived service and their counsel filed notices of appearance.

On October 27, 2023, the Court ordered plaintiff to update his mailing address, as he had been released from DRCI. After plaintiff provided a new mailing address, the Court set a deadline of November 20, 2023 for defendants to file an answer.

On November 20, 2023, defendants moved to dismiss the action. Mot. to Dismiss, ECF [51]. Plaintiff has also filed numerous motions which are pending before the Court: a Motion to Compel Discovery, ECF [54]; a Motion for Appointment of Counsel, ECF [58]; a Motion for Summary Judgment, ECF [61]; a Motion to Compel Discovery, ECF [63]; and a Motion for Default Judgment, ECF [65]. Defendants oppose the Motion for Default Judgment. Defs.' Resp. to Mot. for Default J., ECF [68]. Briefing on the Motion for Summary Judgment and discovery were stayed pending ruling on the motion to dismiss. Order of Dec. 27, 2023, ECF [70].

## DISCUSSION

**A.    Default Judgment**

Plaintiff requests that the Court enter default judgment against defendants, arguing that defendants defaulted because they did not file an answer by the November 20, 2023 deadline. Mot. for Default J. 1-2.

Plaintiff is correct that defendants have not yet filed an answer in this action. The motion to dismiss, however, was timely filed. If a motion to dismiss is filed, the deadline to file an answer is postponed until fourteen days after the court's order on that motion. Fed. R. Civ. P. 12(a)(4)(A). Because

---

[3] The Fourth Affidavit in Support of Complaint appears to be a copy of the First Affidavit in Support of Complaint, but with different supporting exhibits attached.

[4] The Fifth Affidavit in Support of Complaint appears to be a copy of the Third Affidavit in Support of Complaint, with some different supporting exhibits attached.

defendants have appeared, defended, and otherwise participated in this action, the Court declines to enter a default against them.

## B.     Federal Rule of Civil Procedure 12(b)(6)

Defendants move to dismiss plaintiff's claims, arguing that he has failed to allege facts sufficient to state a claim under 42 U.S.C. § 1983, does not explain how defendants caused the alleged constitutional violations, and instead alleges that third parties who were not named as defendants in the case caption caused constitutional violations. Mot. to Dismiss, ECF [51], at 3.

### 1.     *Eleventh Amendment Immunity*

To the extent that plaintiff brings claims against defendants in their official capacities, defendants argue that they are immune from suit under the Eleventh Amendment. *Id.* at 15-16.

The Eleventh Amendment confers immunity upon states and their agencies from being sued. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999). The Eleventh Amendment also confers immunity upon state officials who are sued in their official capacities. *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010).

To the extent that plaintiff brings suit against defendants in their official capacities, those claims are barred by the Eleventh Amendment. Plaintiff does not, however, state in his complaint whether he brings claims against defendants in an individual or official capacity. Construing *pro se* plaintiff's pleadings liberally in favor of plaintiff, the Court assumes that defendants are sued in their individual capacities. *See Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) (presuming that individual officials named in a complaint are sued in their individual capacities "even if the complaint does not explicitly mention the capacity in which they are sued."). As a result, the Eleventh Amendment does not bar plaintiff's action against defendants.

### 2.     *Defendants' Roles in Alleged Violations*

Defendants argue that plaintiff fails to adequately plead their involvement, if any, in the alleged constitutional violations. Mot. to Dismiss 15.

As an initial matter, only Randall and Sundquist are named as defendants in this action.

6

Throughout the complaint, plaintiff alleges the involvement of various DRCI officers and employees and describes them as "defendants." The case caption on plaintiff's complaint, however, list the defendants as "CHRISTOPHER RANDALL, MS. AMBER SUNDQUIST ET AL," Compl. 1, and only Randall and Sundquist received notice of this action. *See* Notice of Lawsuit and Request for Waiver of Service, ECF [18]. Each defendant must be named in the case caption and must have notice of the action against them. Accordingly, only Randall and Sundquist are defendants in this action.

Plaintiff does not allege that defendants were directly involved in any of his claims except for the sixth claim, which alleges that Randall and Sundquist deliberately made the grievance system difficult to use, and the eighth claim, which alleges that Sundquist put in place a legal mail policy intended to make it difficult for plaintiff to access the courts. For all other claims, plaintiff argues that defendants were the people "most responsible for the past and continued violations of Plaintiff's U.S. Constitutional rights" because "for over a year" they were made "effectively aware" of the violations of plaintiff's civil rights. Compl. 31. Plaintiff argues that "defendants knew or should have known, while doing their duties, acting under the law and clothed with color of authority, that Plaintiff's rights were being violated" and that defendants "should have acted to protect Plaintiff, but failed to do so, out of incompetence or direct deliberate indifference." *Id.*

The Court construes plaintiff's claims as alleging supervisory liability against defendants. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant was acting under color of state law and that their alleged conduct deprived plaintiff of a federal constitutional or statutory right. *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553, 217 L. Ed. 2d 295 (2024) (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011)). To state a claim for supervisory liability under 42 U.S.C. § 1983, a plaintiff must allege that either 1) the defendant supervisor was personally involved in the constitutional deprivation or 2) a "sufficient causal connection" exists between the "supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately

7

indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." *Starr*, 652 F.3d at 1206-07.  In addition, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998)).  A sufficient causal connection exists if defendant "implemented 'a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'"  *Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995) (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991)).

The Court will address whether plaintiff has sufficiently pleaded supervisory liability in each individual claim.

    3.    *Fourteenth Amendment Claims*

Defendants argue that plaintiff fails to bring any cognizable claim for violation of his Fourteenth Amendment rights.  Mot. to Dismiss 16.  Specifically, defendants state that any claim brought under the Due Process Clause is subsumed by an Eighth Amendment claim and plaintiff has failed to plead any claim brought under the Privileges and Immunities Clause or Equal Protection Clause.  *Id.*

Prisoners are protected by the Due Process Clause.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In many prison contexts, "the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 328 (1986).  This does not, however, foreclose the possibility of bringing a Fourteenth Amendment Due Process Clause claim under 42 U.S.C. § 1983.  Notably, prisoners are entitled to certain due process protections when charged with disciplinary violations that implicate protected liberty interests. *McDonnell*, 418 U.S. at 564-571.

Plaintiff may, therefore, bring claims under the Fourteenth Amendment, provided that they state a plausible claim for relief.

    4.    *First Claim*

Defendants argue that plaintiff's first claim fails to state a claim on which relief may be

8

granted because plaintiff does not allege that he contracted COVID-19, became ill, or was otherwise physically injured as a result of exposure to COVID-19. *Id.* 7.

The Court construes plaintiff's claim as alleging that defendants demonstrated a deliberate indifference to the substantial risk of serious harm posed by exposure to COVID-19. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To sufficiently state a claim for deliberate indifference to a substantial risk of serious harm, plaintiff must plead that an unreasonable or substantial risk of serious harm existed and that defendants were aware of the risk and disregarded it; these are commonly referred to as the "objective" and "subjective" components. *Id.* 834-37; *Helling v. McKinney*, 509 U.S. 25, 35 (1993). In the Eighth Amendment context, a condition causing substantial risk of serious harm includes "condition[s] of confinement that [are] sure or very likely to cause serious illness and needless suffering" in the future. *Helling*, 509 U.S. at 33.

Defendants argue that under the Prison Litigation Reform Act ("PLRA"), a prisoner confined in a correctional facility cannot bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Mot. to Dismiss 7 (quoting 42 U.S.C. § 1997e(e)). Plaintiff does not allege, however, that he suffered a mental or emotional injury as a result of exposure to COVID-19.

Although plaintiff is not required to meet the pleading requirements of 42 U.S.C. § 1997e(e), he still must make a showing that he has standing to assert the claim.

> "In order to have standing, a plaintiff must show: '(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"

*Cal. Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1180 (9th Cir. 2018), as amended (Apr. 18, 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Plaintiff analogizes this case to *Helling*, in which the court found that exposure to environmental tobacco smoke ("ETS") from a cellmate posed both present and future unreasonable risk to

9

plaintiff prisoner's health, constituting an injury for Eighth Amendment standing purposes. Mem. of Law in Supp. of Pl.'s Mot. in Opp. To Defs.' Mot. to Dismiss Summ. J. and Default Mots. ("Pl.'s Opp."), ECF [75], at 8; *Helling*, 509 U.S. 25 at 35.  The plaintiff in *Helling* sufficiently plead deliberate indifference to a substantial risk of serious harm by alleging that there was a substantial risk of serious harm from the ETS and that prison officials were aware of the risk but disregarded it.  *Helling*, 509 U.S. 25 at 35.  While the plaintiff in *Helling* plead that he was exposed to a large quantity of ETS each day, plaintiff here does not state whether he was exposed to any symptomatic or infected persons in the kitchen.  And unlike ETS, exposure to COVID-19 through proximity to potentially infected individuals does not necessarily cause a present or future injury.  Plaintiff does not say whether he later tested positive for COVID-19, became ill, or suffered any other type of injury as a result of his exposure.

Additionally, plaintiff does not state which defendant was superintendent at the time that he worked in the kitchen and was responsible for the policy requiring him to work there, placing him at risk of COVID-19 exposure.

Because plaintiff failed to allege an injury or substantial risk of serious harm and has not sufficiently plead which defendant, if any, was responsible for plaintiff's exposure to a substantial risk of harm, he has failed to state his first claim.

     5.     *Second and Eighth Claims*

Defendants argue that plaintiff has failed to sufficiently plead these claims, which are premised on a denial of plaintiff's right to access the courts, because prisons may place restrictions on incoming mail, prisons may open and inspect certain mail, and plaintiff has not plead an actual injury.  Mot. to Dismiss 8-9.

To state a claim for a violation of the constitutional right of access to the courts, a plaintiff must show that he suffered an "actual injury" because a prison official interfered with his "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  *Lewis v. Casey*, 518 U.S. 343, 349, 356 (1996).  Simply alleging that prison officials engaged in a wrongful act is not sufficient; the alleged act must limit a plaintiff's "meaningful access" to the courts.  *Penton v. Pool*, 724

F. App'x 546, 549 (9th Cir. 2018) (quoting *Phillips v. Hust*, 588 F.3d 652, 655-56 (9th Cir. 2009) and citing *Lewis*, 518 U.S. at 351).

Plaintiff alleges that his legal mail was given to him after being opened by corrections officers and library clerks and that Sundquist put in place a legal mail policy on July 19, 2023 intended to limit access to the courts. His allegations are not sufficient to state an access to the courts claim. As to the second claim, plaintiff does not allege that his opened legal mail limited his ability in any way to access the courts or resulted in an adverse legal outcome. Neither Carrion nor the unnamed corrections officers are defendants in this action, and plaintiff does not allege how Randall or Sundquist were responsible for the opened mail.

As to the eighth claim, plaintiff argues that the new legal mail policy limited his access to the courts because "it will take a minimum of a day or more for the [legal mail request] to be received and then returned to the prison law library, at which point then Plaintiff and or any other prisoner will only then be able to mail said legal motions to any court." Compl. 32. Although a mail policy that frustrates a plaintiff's ability to timely file motions, appeals, or other court documents may satisfy the requirements of an access to courts claim, *see Penton*, 724 F. App'x at 550, plaintiff's allegation that the new mail policy included a day-long waiting period, without more, is insufficient to state a claim. The complaint does not contain factual allegations sufficient to state a claim for denial of access to the courts.

In addition, plaintiff alleges that defendants, Carrion, and unnamed corrections officers opened his legal mail in retaliation for his grievances related to his kitchen work. The First Amendment prohibits government officials from retaliating against individuals for constitutionally protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To state a claim for retaliation, a plaintiff must show that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir.1994)) (alterations in original). The question is not whether speech was actually suppressed, which may exclude claims by "unusually determined" plaintiffs; "the proper inquiry asks 'whether an official's acts would chill

11

or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* (quoting *Crawford–El v. Britton*, 93 F.3d 813, 826 (D.C.Cir. 1996)). In the prison context, a plaintiff must demonstrate that the alleged retaliatory conduct did not serve a legitimate correctional goal. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A plaintiff also must show some connection between his speech and the alleged retaliatory action. *Stinson v. Galaza*, 73 F. App'x 312, 314 (9th Cir. 2003) (citing *Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir.1995)).

Plaintiff has not sufficiently plead a claim for retaliation. Plaintiff states that he was delivered opened legal mail; this, with nothing else, does not describe the kind of act that would chill future grievances. Nor does plaintiff state that he was dissuaded from continuing to file grievances and pursue litigation. Even if the opening of legal mail was the kind of conduct that would chill protected speech, plaintiff does not describe any connection between his grievances related to kitchen working conditions and Carrion's decision to open his mail. Finally, neither Carrion nor the unnamed corrections officers who allegedly opened plaintiff's mail are named as defendants in this action. Plaintiff alleges that Randall was made aware of his opened mail and wrote to plaintiff that "he would contact the law librarian's Ms. Sarah Carrion's supervisor about said complaints." Compl. 8. Because plaintiff does not allege that Randall was personally involved in opening his mail, he must allege that there was some causal link between Randall's conduct and the alleged constitutional violation. As currently plead, plaintiff's allegations that Randall was made aware of the opened mail through a grievance and promised to speak with Carrion's supervisor does not establish supervisory liability. As a result, plaintiff has failed to sufficiently plead the retaliation component of his second claim.

6. *Third Claim*

Defendants argue that plaintiff's third claim is not sufficiently plead because plaintiff does not describe any connection between the alleged incident with Carrion and defendants, aside from the allegation that defendants were "effectively aware" of Carrion's conduct. *Id.* 10-11.

Plaintiff's allegations that Carrion retaliated against him for filing prison complaints against her by calling him a slur and falsely accusing him of aggression, resulting in his placement in administrative

segregation, may be sufficient to state a claim against Carrion for retaliation. Carrion is not, however, a defendant in this action. If plaintiff wishes to bring suit against Carrion, he must name her as a defendant in the case caption and serve on her a copy of the summons and complaint.

As currently plead, however, the only defendants in this action are Randall and Sundquist. Plaintiff alleges that he wrote several letters to Randall prior to his placement in administrative segregation, expressing his fear that Carrion would retaliate against him, but Randall took no action. Plaintiff also alleges that he was subjected to a fundamentally unfair disciplinary hearing, at which he was unable to present a security camera recording of the incident, and was punished as a result.

The Court construes plaintiff's allegation that Randall was aware of a risk that plaintiff would be unreasonably placed in administrative segregation, but did nothing to prevent it, as a deliberate indifference claim under the Eighth Amendment. Placement in administrative segregation does not, however, violate the Eighth Amendment. *Salstrom v. Sumner*, 959 F.2d 241, at *1 (9th Cir. 1992). Plaintiff does not plead that he suffered any cruel and unusual punishment as a result of being placed in administrative segregation. Plaintiff has not, therefore, sufficiently plead an Eighth Amendment violation under his third claim.

The Court construes plaintiff's allegation that he was subjected to an unfair disciplinary hearing, at which security camera footage of the alleged incident was not presented, and placed in administrative segregation, as a due process claim. Inmates, however, generally do not have a protected liberty interest in being free from administrative segregation. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). The exception is when administrative segregation constitutes an "atypical and significant" prison hardship. *Id.* Courts look to three factors to determine whether a hardship is atypical and significant:

> " (1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence."

*Id.* (quoting *Sandin*, 515 U.S. at 486-487). Here, plaintiff has not plead allegations that ten days in

13

administrative segregation does not comport with the prison's discretionary authority, was long in duration, or affected the duration of his sentence. As a result, he has failed to state a due process claim related to his placement in administrative segregation.

   7.  *Fourth Claim*

    Plaintiff's fourth claim, defendants argue, is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because it challenges the duration of his confinement. *Id.* 11-12. Even if it were not barred, defendants argue that the claim is now moot because plaintiff is no longer incarcerated. *Id.* 12. In addition, defendants argue that plaintiff does not allege defendants' role in denying him his time served and the court cannot enjoin non-party Oregon Department of Corrections. *Id.* 12-13.

    The Supreme Court has held that the proper vehicle for a challenge to the fact or duration of incarceration is a petition for habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Based on that principle, *Heck* bars any 42 U.S.C. § 1983 action when "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." *Heck*, 512 U.S. at 481-82. As relevant to plaintiff's claims, *Heck* bars claims related to the denial of good-time credits, which the Supreme Court found necessarily implicated the validity of the sentence. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997).

    Plaintiff asks for an order of injunctive relief against the Oregon Department of Corrections to adjust his relief date. As plaintiff has been released from prison, his request is now moot. In addition, the Oregon Department of Corrections is not a named defendant in this action. As a result, plaintiff has failed to state a claim for relief on his fourth claim.

    Plaintiff additionally alleges that Sundquist, DRCI, and the Multnomah County District Attorney's Office intentionally refused to give him credit for time served in retaliation for his prison grievances. Compl. 26. However, plaintiff has not plead that the failure to credit time served chilled or deterred his speech, or any causal connection between his speech and the reprisal, so this claim too fails.

   8.  *Fifth Claim*

    Defendants argue that plaintiff has failed to state a claim for his fifth claim because there is no constitutional right to early release and, even if there were, plaintiff has not plead that he meets all the

requirements for AIP. *Id.* 13-14.

Plaintiff fails to state a due process claim because there is no protected liberty interest in early release or participation in early release programs. *Reeb v. Thomas*, 636 F.3d 1224, 1129 n.4 (9th Cir. 2011). Similarly, under the Eighth Amendment, a denial of participation in an early release program does not constitute cruel or unusual punishment.

Even if there were a protected interest in early release, plaintiff has failed to state a claim because he was not guaranteed participation in AIP and he does not plead that he met the requirements to participate in AIP. *See* Decl. of April M. Stone, ECF [52], Ex. 1 (judgment authorizing, but not requiring, the Oregon Department of Corrections to consider plaintiff for AIP and early release).

Finally, to the extent that plaintiff alleges retaliation, his pleadings are insufficient to state a claim. Plaintiff does not plead that the denial of participation in an early release program chilled or deterred his filing of prison grievances, nor any causal connection between his protected speech and the alleged retaliation. Accordingly, plaintiff has failed to state a claim on his fifth claim.

9.  *Sixth, Seventh, and Ninth Claims*

Finally, defendants argue that plaintiff's sixth, seventh, and ninth claims fail to state any independent claims.

The Court construes plaintiff's sixth and seventh claims, which asserts that defendants were aware of plaintiff's grievances and violations of his constitutional rights, as an allegation that defendants had supervisory liability for plaintiff's asserted claims and has analyzed the other claims accordingly. These are not independent claims.

Plaintiff's ninth claim asserts that as a self-represented litigant, his claims should be construed liberally, and does not assert a separate claim. Although plaintiff states that the process of filing the complaint from prison was financially burdensome for him, he does not allege a constitutional violation.

Because plaintiff has failed to state a claim on which relief can be granted, the motion to dismiss is granted. It is not absolutely clear that the deficiencies described above could not be corrected, at least in part, so the dismissal is without prejudice and plaintiff may amend his complaint.

**Federal Rule of Civil Procedure 12(e)**

In the alternative, defendants request that, if plaintiff is granted leave to amend, he make his allegations more definite and certain. Specifically, defendants request the following clarifications:

> "(1) plead whether he contracted COVID-19 or was otherwise physically injured as a result of the events described in Claim One;
> (2) plead whether he has ever received a positive COVID-19 test result, as opposed to an antibody test, and if so, when;
> (3) plead whether he has ever been diagnosed with COVID-19, and if so, when;
> (4) identify which defendant(s) each of his claims are brought against and describe each defendant's personal involvement in causing the alleged constitutional violations;
> (5) include all Defendants against whom Taylor intends to bring claims in the case caption; and
> (6) plead what injury each of the alleged violations of his constitutional rights caused Taylor."

Mot. to Dismiss 4.

Because the Court granted the motion to dismiss without prejudice for plaintiff to file an amended complaint that corrects the deficiencies identified by defendants and described herein, the motion to make more definite and certain is granted.

## CONCLUSION

For the foregoing reasons, the Motion for Default Judgment, ECF [65], is DENIED. The Motion to Dismiss, ECF [51], is GRANTED without prejudice and with leave to amend. Plaintiff may file an amended complaint within thirty (30) days of this Order that corrects the deficiencies described above.

Plaintiff is reminded that a complaint is a "short and plain statement" of the factual basis for plaintiff's claims, and a legal memorandum is not yet required at that stage of the proceedings. Fed. R. Civ. P. 8. His amended complaint should not be "needlessly long" or "highly repetitious." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (3d ed. 2010)). Plaintiff must identify each person or entity he wishes to name as a defendant in the case caption. Writing "et al" does not suffice to identify the intended defendants to the Court. In addition, plaintiff must serve each and every defendant with a copy of the summons and complaint.

The Motion to Compel Discovery, ECF [54], Motion for Appointment of Counsel, ECF [58], Motion for Summary Judgment, ECF [61], and Motion to Compel Discovery, ECF [63], are DENIED as moot. If plaintiff files an amended complaint that corrects the issues described in this opinion and order and later finds it necessary to refile any of the above motions, he may do so at the appropriate time.

IT IS SO ORDERED.

DATED this 16th day of May, 2024.

_____
Adrienne Nelson
United States District Judge